No. 32,727

GRACE L. SCHNEIDER, *Appellee*, v. ERNEST L. SCHNEIDER et al., *Appellants*.

(56 P. 2d 445)

Opinion filed April 11, 1936.

*Richard E. Bird* and *Richard E. Bird, Jr.,* both of Wichita, for the appellants.

*P. E. Nulton, R. L. Letton,* both of Pittsburg, *D. G. Smith,* of Girard, and *J. H. Snyder,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

BURCH, C. J.: The appeal is from an order vacating a judgment of partition of land, pursuant to motion alleging the judgment was the product of irregularity.

The land consists of city lots in Pittsburg, on which stands a business building. The lots were owned originally by Josephine Schneider. She died, leaving a will which gave all her property, real and personal, except wearing apparel, to her six children and heirs at law, Adam A. Schneider, Frank A. Schneider, Emil A. Schneider, Ernest L. Schneider, Lydia (Schneider) Webb, and Celine (Schneider) Arnott. The will contained the following provision relating to the lots in controversy:

"Sixth. It is my wish that my building in Pittsburg, Kansas, should be taken care of by my son, Ernest L. Schneider and my daughter, Celine Arnott, nee Schneider. The income from my building to be divided equally among my heirs, no bonds to be required from either one for handling the estate, no charges to be made to the heirs, but all expenses accruing through this care, and all time lost by the said parties to be paid by the heirs."

It may be noted here this provision of the will did not create a trust for any purpose.

Josephine Schneider died on March 3, 1925. On March 6, 1925, the heirs and devisees entered into a written agreement, which reads:

"This agreement made and entered into this 6th day of March, 1925, by and between A. A. Schneider, F. A. Schneider, E. A. Schneider, E. L. Schneider, Lydia Webb and Celine Arnott, being of legal age and all heirs of Josephine Schneider, deceased.

"The said heirs do hereby constitute and appoint E. L. Schneider, of Wichita, Kansas, and Celine Arnott, of Sherman, Texas, son and daughter of said Josephine Schneider, deceased, trustees of said estate with authority to collect all moneys due the estate.

"It is further agreed that said trustees shall have the authority to incur and pay all expenses on said estate.

"It is further agreed that the said heirs of the said Josephine Schneider, deceased, agree that a sufficient sum will be set aside to take care of all expenses incurred on the said estate from time to time.

"It is further agreed that any expense incurred by the said trustees of the estate be borne by said estate.

"It is further agreed that distribution of all net income from said estate be divided equally by and between the said heirs of Josephine Schneider, deceased, quarterly, beginning July 1, 1925.

"It is further agreed that the heirs of the said Josephine Schneider, deceased, agree not to sell or assign their interest in and to the said estate of Josephine Schneider, deceased, unless full consent is given by all the heirs.

"It is hereby further agreed that in the event of the death of any one of the above-mentioned heirs, this agreement shall be binding on the part of the heirs of the deceased heir, of the estate of Josephine Schneider, deceased."

It may be noted here this instrument, embodying an ordinary family settlement, normally dispensing with probate of the will, did not create a trust for any purpose.

The joint agents took possession of the estate, managed it and collected income until the death of Celine Arnott on April 16, 1932. After that, Ernest L. Schneider remained in sole control, and in sole control of the lots and building in controversy.

On June 10, 1930, Ernest L. Schneider deeded to his wife, Daisy F. Schneider, his one sixth interest in the lots.

On January 13, 1934, Grace L. Schneider commenced a lawsuit against Ernest and his wife, Daisy. Plaintiff said she was, at the time of filing the petition, and since the 8th day of August, 1925, had been the owner of an undivided one-sixth interest in the property; that since the death of the testatrix, Ernest had been the owner of a one-sixth interest in the property; that since August 8, 1925,

Ernest had assumed management and control of the property in controversy; that Ernest had collected rents for which he had not accounted, and had failed to collect rents; that he had committed waste and had allowed the property to deteriorate and become unproductive. The prayer was for an accounting and for judgment for plaintiff, against Ernest. The petition also alleged the deed of Ernest to his wife, Daisy, was without consideration and was made to defraud plaintiff. So, a further prayer was that the deed to Daisy be set aside as fraudulent, and that the amount of the plaintiff's claim and judgment be made a lien on Ernest's one-sixth interest in the lots. A further prayer was that a receiver for the property be appointed, and a receiver was appointed.

It may be noted here that plaintiff was not an heir or devisee of Josephine Schneider. The petition did not disclose the source of plaintiff's title. It later appeared she is the wife of Frank A. Schneider. It seems she acquired her interest five months after her husband had signed the family agreement, in which it was stipulated no heir should sell without first obtaining consent of all the others. In an amended petition, to be referred to later, plaintiff, in effect, denied the family agreement was binding on her, by alleging she was never a party to it and had never agreed or consented to it. Ernest did not deed to his wife until 1930.

Ernest Schneider and his wife moved the court to require plaintiff to make her petition definite and certain, and the motion was allowed in part.

On motion, all coöwners with plaintiff and Ernest were made parties defendant. Plaintiff's husband, Frank A. Schneider, was also made a party, and defaulted. All other new defendants answered, and prayed for determination of interest, and for partition.

On May 29, 1934, plaintiff filed an amended petition. She alleged she was owner of a one-sixth interest in the property, alleged Ernest was owner of a one-sixth interest, and named all other persons having interests, specifying the interest of each one. The amended petition contained the following allegation:

"Plaintiff further says that she desires to hold her land in severalty, and that said property is subject to partition in this action."

Plaintiff then renewed all her charges against Ernest, prayed judgment against him, and against Daisy, substantially as before, and prayed the receivership be continued. The amended petition also prayed for partition.

A motion for judgment on the pleadings for partition was made and was allowed on September 14, 1934. All parties, plaintiff and defendant, except Frank A. Schneider, were represented by counsel, and the court found that all parties, except Frank, by their respective counsel, stipulated and agreed in open court that the real property should be partitioned. The court then found the interests of the respective owners, except the one-sixth interest belonging either to Ernest or to Daisy, and with respect to that interest, found the property should be partitioned as if the title were in Daisy. The court then adjudicated the interests of the owners in accordance with the findings, adjudged the property could not be partitioned in kind without manifest injury, and appointed commissioners to appraise the property, pursuant to the statute, and to report to the court. Jurisdiction to determine issues other than the issue of partition was reserved, and with respect to those issues, the cause was continued.

The commissioners were ordered to report on or before October 15, 1934, and duly filed their report. On October 17, 1934, plaintiff filed a motion, asking that the report of the commissioners be set aside, and that new commissioners be appointed to make a new appraisement. On October 19, Daisy F. Schneider moved to confirm the report of the commissioners. The two motions were heard on November 17. The court heard evidence, denied plaintiff's motion, approved the report of the commissioners, and ordered that the parties to the action should have twenty days from November 17, 1934, in which to make election to take the property at its appraised value.

On November 21, 1934, plaintiff filed a motion, asking for reconsideration of the rulings on the motions to set aside and to confirm the report of the commissioners. On November 28, 1934, all defendants, except Frank A. Schneider, elected to take the property at its appraised value. On December 6, 1934, the court extended the time within which election might be made to take the property at the appraised value, to January 7, 1935. On January 4, 1935, plaintiff's motion to reconsider was heard. Evidence was introduced and the matter was taken under advisement. On January 7, 1935, plaintiff filed her election to take the property at the appraised value, and on February 15, 1935, her motion to reconsider was denied.

On March 22, 1935, and after expiration of the term at which the

partition judgment was rendered, plaintiff filed a motion to vacate the judgment, pursuant to R. S. 60-3007, which reads:

"The district court shall have power to vacate or modify its own judgments or orders, at or after the term at which such judgment or order was made:

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"*Third.* For mistake, neglect or omission of the clerk, or irregularity in obtaining a judgment or order."

The procedure to vacate, in such cases, is by motion.

The irregularity complained of was that plaintiff did not know her amended petition, filed in May, 1934, prayed for partition; that the amended petition did not speak the truth, in that plaintiff's counsel inserted in the pleading a prayer for partition by inadvertence and through mistake, without plaintiff's knowledge or consent; that plaintiff was unacquainted with the journal entry of the judgment of partition, agreed to by counsel and filed in October, 1934; and the plaintiff did not, in fact, ask for nor consent to any judgment for partition.

The motion to vacate contained statements not pertinent to the subject of irregularity in obtaining the judgment, and was supported by plaintiff's affidavit, the material portions of which read:

"The deponent further states that the plaintiff's amended petition filed in the above-entitled cause does not speak the truth with reference to partition of the above-described property in that she at no time desired partition of said property, and partition was prayed for without her knowledge and consent; and that she was not acquainted with the contents of the journal entry agreed to by counsel and filed October 17, 1934, and did not in fact sanction said prayer for partition or journal entry filed on rendition of said partition judgment.

"Deponent further states that her counsel, on her behalf, did file an election on January 7, 1935, to take the above-described real property at its appraised value, and that she filed her election to take said real property with protest for the purpose of preserving her right, title and interest in said real property and without prejudice to her right to appeal from any and all orders and rulings made by the court in the above-entitled cause, and to do other matters to preserve her interest in said property."

The motion to vacate, which was not verified, was heard on April 1, 1935. Plaintiff's counsel made a statement, and made an offer to show the condition of the property, and to show the present sale value and rental value were very much less than they were a few years before, due to the fact that the building had been grossly neglected and allowed to get into a state of disrepair and to depreciate and deteriorate generally. The evidence was not received, and

the motion was taken under advisement. On July 6, 1935, the district court sustained the motion to vacate, set aside the judgment in partition and all subsequent proceedings, and granted plaintiff twenty days within which to file an amended petition. A second amended petition was filed on July 25, 1935, and on August 14, 1935, the defendants, except Frank A. Schneider, appealed.

Plaintiff contends the order vacating the judgment of partition was not an appealable order.

Opposing elections to take at the appraised value having been filed, the next step in execution of the judgment of partition was, to issue an order for the sheriff to sell the property as on execution. (R. S. 60-2111.) The order vacating the judgment was not an order merely opening the judgment temporarily to allow plaintiff to defend against partition. The order was absolute. It canceled everything that had been done, permitted plaintiff to begin the case all over again, and necessitated a trial *de novo* on new pleadings. The order being one affecting substantial rights of defendants, made in a special proceeding (R. S. 60-103, 60-104, 60-105) after judgment, was an appealable order under R. S. 60-3303.

The last paragraph of plaintiff's affidavit, filed in support of the motion to vacate, refers to her election to take the property at the appraised value, as made under protest. The election was in writing, and the writing is in the record. It contains no protest. The record is barren of any protest by plaintiff to anybody, and the paragraph of the affidavit merely described an unmanifested mental state, and is of no importance.

In a noteworthy partition case, the partition of Poland among Austria, Prussia and Russia, Maria Theresa, Queen of Austria, was reluctant to accept her share. In telling of the affair, Frederick the Great said, "Catherine and I were old brigands. The young queen of Austria wept. She wept and she took." In this instance, plaintiff knowingly and unequivocally elected to take, and thereby ratified the judgment of partition.

Neither plaintiff nor her counsel denied that she had knowledge of the appraisement. She then knew, or should have known, proceedings to make effective a judgment for partition, rendered without her consent, were in progress. What did she do? She filed a motion to set aside the appraisement, and that was not all. She moved that new commissioners be appointed to make a new ap-

praisement, and thus sought to enforce the judgment of partition. She was given a hearing on her motion. After a hearing, the motion was denied, the appraisement was approved, and she, in common with the other parties to the action, was given time within which to elect to take at the appraised value. Then what did she do? Still making no complaint about the judgment, she filed a motion for reconsideration of the ruling on her motion to set aside the appraisement and appoint new commissioners. She was given a hearing on that motion. Meantime, all parties, except herself, had elected to take. Time within which she might elect was extended. She then, in effect, abandoned her motion to reconsider, and filed her election to take.

When plaintiff discovered measures to effectuate the irregular judgment of partition were in operation, two courses were open to her: One was to accept the judgment as regular and act under it. The other course was, to deny regularity of the judgment and have it set aside. Either course was incompatible with the other. Twice plaintiff brought on hearings on motions, justifiable only on the theory the judgment was regular. Then she submitted to the judgment and sought to take advantage of it.

The homely method of expressing the rule in such cases is to say, a person may not blow hot and blow cold on the same subject. In legal phrase, a party must elect between inconsistent courses, and in doing so, it is the first decisive step that counts. The decisions of this court on the subject are numerous and uniform.

The result of the foregoing is, the order vacating the judgment of partition and subsequent proceedings was erroneous.

The code of civil procedure contains the following provision:

"The court shall have full power to make any order not inconsistent with the provisions of this article that may be necessary to make a just and equitable partition between the parties, and to secure their respective interests." (R. S. 60-2114.)

This section furnishes means for framing and enforcing a just judgment, but does not enlarge power to vacate judgments which have become final. If, however, on return of the cause to the district court, the court should be of the opinion that, because of changed conditions, the appraisement which has been made now seems to be too low, the court is authorized to order a new appraisement, to appoint new commissioners to make the appraisement, and to effectuate the judgment of partition on the basis of the new ap-

praisement. Otherwise, the court should order the property sold on the basis of the former appraisement.

The judgment of the district court is reversed, and the cause is remanded with direction to set aside the order vacating the judgment of partition, and to proceed further in accordance with this opinion.